**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT LONDON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>V.<br><br>**JIMMY D. BENGE,**<br>Defendant. | **CRIMINAL NO. 6:12-CR-59-KKC-HAI**<br><br><br>**ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on a report and recommendation (DE 729) from Magistrate Judge Hanly A. Ingram, and subsequent objections filed by Defendant Benge (DE 734). While the objections were filed out of time and after the Court adopted Judge Ingram's recommendation, the Court will consider the objections as a motion to reconsider. For the following reasons, defendant's objections (DE 734) are **DENIED** and the Court follows the recommended disposition (DE 729).

## I. INTRODUCTION

A detailed background of this case is contained in the Magistrate Judge's opinion previously adopted by this Court. (DE 729). The Court now recounts only those portions necessary to its determination of the pending motion.

In November 2012, Benge was indicted for participating in a conspiracy to distribute oxycodone. (DE 1). In March 2013, a second superseding indictment added a murder charge, alleging that Benge, along with others, "conspire[d] to kill Eli Marcum with intent to retaliate against him for providing information to a law enforcement officer relating to the commission of a Federal offense…." (DE 117 at 2).

1

On May 12, 2014, Benge and codefendant Gerald Sizemore jointly moved to dismiss the indictment, alleging a violation of their due process rights. (DE 393-1). In particular, the two alleged that Kentucky State Police Detective Jeff Senters improperly destroyed "a knife found near the victim" and "a partially burnt yellow telephone cord located about a yard from the victim's head." *Id.* at 1-3.

While the Court was in the process of scheduling a follow-up hearing on the motion to dismiss, Benge and Sizemore moved for rearraignment.[1] Pursuant to a binding plea deal with Benge, the government agreed to dismiss with prejudice the murder charge, and Benge agreed to accept the maximum sentence on the oxycodone conspiracy charge. (DE 586 at 1-2). The plea agreement also contained a waiver of appeal and collateral-attack rights. *See* (DE 586 at 2). Judge Thapar accepted Benge's guilty plea to the drug conspiracy. (DE 507).

Before sentencing, Benge moved to withdraw his guilty plea, arguing that "his roles in the conspiracy to distribute oxycodone allegation have been substantially exaggerated and are false," that he was actually innocent of the murder, that "the plea negotiation process was rushed," and that he therefore had agreed to an excessive and unfair sentence. (DE 528-1 at 3). Judge Thapar denied the motion, sentenced Benge consisted with the plea deal, and entered judgment. (DE 556). The United States Court of Appeals for the Sixth Circuit subsequently affirmed the judgment and upheld the denial of Benge's motion to withdraw his plea. (DE 630).

On December 27, 2016, Benge timely filed a motion under 28 U.S.C. § 2255, alleging several ineffective assistance of counsel claims, a separate Sixth Amendment violation, and a *Brady* violation. (DE 642; DE 729 at 4-5). Magistrate Judge Ingram recommended this Court deny Benge's motion and issue no certificate of appealability. (DE 729). In his

---

[1] "Rearraignment" is the term used in this District to denote a proceeding for change of plea.

recommendation, Judge Ingram specifically noticed the parties of their appeal rights, and that failure to make timely objections consistent with those rights normally resulted in waiver of further appeal or review by the District Court and Court of Appeals. (DE 729 at 27). Benge failed to file timely objections to the recommendation, but did file a notice of appeal with the Sixth Circuit approximately one month after the Magistrate Judge's recommendation was filed. (DE 730). The Sixth Circuit dismissed the appeal for lack of subject matter jurisdiction (DE 732); this Court subsequently adopted the Magistrate Judge's recommendation (DE 733); and Benge then filed nearly forty pages of handwritten objections (DE 734). Since Benge's objections were filed prior to this Court's entry of judgment on the recommendation, and his intent to challenge the Magistrate Judge's recommendation was clear from his notice of appeal to the Sixth Circuit, the Court has construed his objections as a motion to reconsider its prior ruling adopting the recommendation. (DE 738).

## II. ANALYSIS

Even considering Benge's objections to the Magistrate Judge's recommendation, the Court finds adoption of the recommendation appropriate. For relief under 28 U.S.C. § 2255, Benge "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States,* 442 F.3d 959, 964 (6th Cir. 2006) (quoting *Mallett v. United States,* 334 F.3d 491, 496-497 (6th Cir. 2003)). In making a § 2255 motion, a movant generally bears the burden of proving factual assertions by a preponderance of the evidence. *See McQueen v. United States,* 58 F.App'x 73, 76 (6th Cir. 2003) (*per curiam*). This Court makes a *de novo* determination of those portions of a recommended disposition to which objections are made. *See* 28 U.S.C. § 636(b)(1)(c).

3

**A. Threshold Issues**

   1. Waiver Provision

Benge's plea deal included a provision in which Benge waived the right to appeal the guilty plea, conviction, and sentence of his case. (DE 586). And except for claims of ineffective assistance of counsel, Benge waived the right to collaterally attack the guilty plea, conviction, and sentence. *Id.* In his § 2255 motion, Benge made arguments based on claims other than ineffective assistance of counsel, including alleged *Brady* violations and alleged violations of the Sixth Amendment based on the government's seizure of Benge's assets. (DE 646 at 41-50).

The Magistrate Judge found that the waiver made by Benge was knowing and voluntary, and therefore Benge had waived all arguments outside the ineffective assistance of counsel context. (DE 729 at 9-10). The Magistrate Judge based his finding on the Sixth Circuit's Order affirming the District Court's judgment, and finding that Benge could not appeal his conviction and sentence:

> The district court discussed the appeal-waiver provision of Benge's plea agreement with him during rearraignment. Benge acknowledged the appeal-waiver provision and stated that he understood it and had no questions about it. The district court emphasized that Benge waived "almost every right [he had] to challenge this conviction and sentence upon the court's acceptance of the plea agreement. Benge stated that he understood. Nothing in the record suggests that Benge's assent to the plea agreement, and specifically to the appeal-waiver provision, was unknowing or involuntary. Thus, the appeal-waiver provision in the plea agreement is enforceable and Benge may not appeal his conviction and sentence.

(DE 630 at 2). Thus, it is clear that the enforceability of the plea, including its waiver provision, has been directly appealed and decided. Absent exceptional circumstances, such as an intervening change in the law, Benge may not use a § 2255 motion to relitigate an issue that was raised on appeal. *See Wright v. United States,* 182 F.3d 458, 467 (6th Cir. 1999); *DuPont v. United States,* 76 F.3d 108, 110 (6th Cir. 1996). So to the extent that Benge alleges

the waiver itself was not entered into voluntarily and knowingly, the Court disagrees, and finds no basis to relitigate this issue. *See* (DE 734 at 19) (arguing the Magistrate Judge failed to differentiate between Benge's attack on the plea and the waiver); *See also* (DE 734 at 20-21) (arguing Judge Thapar's comments at sentencing showed that the waiver was not voluntary and knowing). Similarly, while Benge continues to argue that his counsel was ineffective for procuring and allowing an involuntary waiver, *see* (DE 734 at 22-23), these arguments are not persuasive, since the waiver has already been found to have been voluntary on appeal. *See Coley v. Bagley,* 706 F.3d. 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial").

In an attempt to avoid the waiver, Benge presents two further arguments. First, Benge argues that issues regarding *Brady* arose after he entered the waiver and should be excluded from its reach. (DE 734 at 24). Even if this were a valid legal ground, Benge's motion to dismiss the indictment shows that, prior to accepting the plea deal, he both knew of Detective Senters' destruction of evidence, and potential contradictions in statements made by Senters. *See e.g.,* (DE 393-1 at 7). The statements that Senters was later indicted for occurred at the hearing on Benge's motion to dismiss, months before Benge chose to plead guilty. (DE 431; DE 500). Thus, Benge knew the factual circumstances underlying the Senters indictment well before he pled. At sentencing, Benge's counsel made clear that he believed Senters had previously perjured himself, and Senters had "entered an explanation for his false statements" through counsel on the record of the case within a week or two of the statements. (DE 622 at 55-58). The Court is therefore not persuaded by Benge's argument that this issue is outside the scope of the waiver because it arose only after the execution of Benge's appeal-waiver, or constituted exculpatory evidence that was withheld by the government.

Second, Benge argues that his Sixth Amendment claim regarding the government's seizure of his assets, which allegedly prevented him from obtaining counsel, was based on a

decision by the Supreme Court issued after he entered the waiver, and thus is not subject to it. (DE 734 at 29-30). Since the appeals-waiver is enforceable, this argument is without merit. *See In re Garner,* 664 Fed.Appx. 441, 443 (6th Cir. 2016) ("[W]here developments in the law later expand a right that a defendant has waived in a plea agreement, the change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature").

2. Magistrate Judge's Treatment of Affidavits

By alleging ineffective assistance of counsel, Benge waived his attorney-client privilege in relation to those claims contained in his § 2255 that deal with assistance of counsel—he injected into the litigation an issue that required testimony from his former attorneys. *See In re Lott,* 424 F.3d 446, 454 (6th Cir. 2005). Benge does not object to that finding. (DE 734 at 12). However, Benge believes the Magistrate Judge acted improperly when he ordered Benge's former attorneys to file affidavits responding to the claims of ineffective assistance of counsel contained in his § 2255. *Id.*; (DE 659 at 2).

But the Magistrate Judge's order, nor his consideration of Benge's former counsels' affidavits, was error. *See e.g., United States v. Pinson,* 584 F.3d 972, 978-79 (10th Cir. 2009) (finding no abuse of discretion to compel counsel to provide a declaration concerning ineffective assistance of counsel claims, but cautioning that such an order should be carefully tailored to protect Sixth Amendment rights).[2] Here, the Magistrate Judge's order required former counsel to "respond to the claims of ineffective assistance of counsel contained in

---

[2] This approach has been embraced by numerous district courts across the country. *See e.g., United States v. Bellock*, No. 1:13CR48-HSO-JMR-1, 2016 WL 234852, at *1 (S.D. Miss. Jan. 20, 2016) (requiring former counsel to respond to ineffective assistance claims by filing affidavit); *see also Dunlap v. United States*, No. 4:09- CR-00854-RBH-1, 2011 WL 2693915, at *3 (D.S.C. July 12, 2011) ("Trial Counsel will be required to respond in an affidavit to each of the allegations concerning her alleged ineffectiveness and, if an evidentiary hearing is necessary, Trial Counsel may be called to testify concerning those same matters."); *see also Hayes v. United States*, No. 4:09-CV531-CDP, 2009 WL 2071244 (E.D.Mo. July 13, 2009) (ordering "that the attorney client privilege between Hays and her former counsel Caterina M. DiTraglia is waived as to all matters related to the allegations of the motion filed by Hays under 28 U.S.C. § 2255, and attorney DiTraglia is authorized and ordered to provide the requested information to the Assistant United States Attorney in the case") (emphasis added).

[Benge's] § 2255 motion," and that "[t]he information in the affidavit shall be limited to only that information…which is necessary to respond to [Benge's] ineffective assistance of counsel claims." (DE 659 at 2). As such, the order was properly limited in scope and, unlike Benge asserts, did not require his former attorneys to "support the different arguments and positions the government took against Benge in the motion to dismiss." (DE 734 at 12). The Court finds no error.

Finally, Benge objects to the Magistrate Judge's decision to not consider the affidavit of Renus Delph, a former codefendant on the conspiracy to kill a federal informant charge, filed by Benge in support of his § 2255. (DE 729 at 4; DE 660). The affidavit was filed under seal and docketed as a motion to amend Benge's § 2255 motion. The affidavit describes an interview conducted more than a year after Benge pled guilty, and describes an ongoing investigation into potential criminal activity by law enforcement. After review of the affidavit, the Court agrees with the Magistrate Judge that it has no bearing on the claims brought by Benge in his § 2255, and finds no error in its treatment.

## B. Ineffective Assistance of Counsel Claims

A defendant claiming ineffective assistance of counsel must show (1) that counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366 (1985) (applying *Strickland* test to challenges to guilty pleas based on ineffective assistance of counsel). The Supreme Court has further explained that:

> To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness. A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotations and citations omitted). Further, in order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. In this case, the Magistrate Judge is correct in concluding that Benge has not proven ineffective assistance of counsel.

1. <u>Counsel's Failure to Object to Judge Thapar's Comments</u>

In his § 2255 motion, Benge argued that his counsel should have objected to comments made on the record by Judge Thapar regarding the plea agreement and the assistance provided by Benge's counsel. *See* (DE 622 at 58-62). First, Benge argued the comments amounted to Judge Thapar's improper participation in plea negotiations, and they coerced Benge to accept the plea deal. In his recommendation, the Magistrate Judge pointed out that Judge Thapar's remarks were made after the plea agreement had been reached, and thus could not have coerced Benge in any way. (DE 729 at 13-15). Benge does not object to the denial of his motion on this ground. (De 734 at 15).

Instead, Benge renews his argument that the colloquy by Judge Thapar showed bias rising to the level of structural error, requiring automatic reversal, and thus counsel should have objected. (DE 734 at 15-16). The Court disagrees. First, the case cited by Benge specifically discusses involuntary or coerced confessions as structural error not subject to the harmless error rule, something not at issue in this case. *See Arizona v. Fulminante,* 499 U.S. 279, 309-310, 111 S.Ct. 1246 (1991). As pointed out above, the Magistrate Judge is correct and Benge appears to admit (DE 734 at 14-15), that there could be no coercion by Judge Thapar's comments because Benge had already signed a binding plea agreement.

Second, while *Fulminante* does suggest that a Judge who is not impartial is a structural defect in the constitution of the trial mechanism, we do not have such a problem here. As an example of impartiality, the *Fulminante* Court cited a case involving a Mayor who received

8

compensation in addition to his salary if he found defendants guilty of violating a liquor prohibition and levied a fine against them. *Fulminante,* 499 U.S. at 309, 111 S.Ct. 1246 (citing *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437 (1927)). Benge has wholly failed in his attempt to liken such impartiality to this case.

Here, Judge Thapar specifically recused himself of any participation in Benge's potential ineffective assistance of counsel claims prior to making any comments regarding Benge's counsel, and made the comments to explain his recusal. *See* (DE 622 at 58-59) ("I think to the extent further proceedings exist in this case…I should recuse, and here's why. I have a strong view of how your counsel performed. I don't think I can separate that in determining any habeas issues"). The ineffective assistance of counsel claim was never before Judge Thapar. Even still, Benge has not shown how Judge Thapar's explanation of his recusal, occurring after Benge's acceptance of a binding plea agreement, amounted to impartiality to any degree—much less that he was prejudiced by his counsel's failure to object at the time of recusal. Since there was no impartiality on any issue before Judge Thapar, there was simply no reason to object. *See Coley v. Bagley,* 706 F.3d. 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial").

Finally, Benge provides no sound objection to the Magistrate Judge's statement that he "fairly considered Benge's IAC claims and [found] them meritless under the *Strickland* standard without regard to any opinions Judge Thapar expressed on the matter at Benge's rearraignment and sentencing hearings." (DE 729 at 16). And in fact, each of the Magistrate Judge's conclusions was grounded in a legal or factual argument having nothing to do with comments by Judge Thapar. In response, Benge simply asks the Court to order recusal of the Magistrate Judge because his impartiality has been shown by his order requiring Benge's former attorneys to tender affidavits regarding IAC claims to the government. (DE 734 at

18). As discussed previously in this opinion, such a decision was not error, and certainly does not warrant recusal.

2. <u>Unreasonable Advice to Accept the Government's Plea Agreement</u>

The Magistrate Judge rejected Benge's argument that his counsel's advice to plead guilty to the conspiracy charge, and a sentence of 20 years, was constitutionally ineffective counsel. (DE 729 at 16). In particular, Benge argued that he was poised to succeed on his motion to dismiss based on the district court's commentary, and that any advice to plead guilty prior to his motion's resolution was therefore ineffective. (DE 646 at 24-25). The Magistrate Judge disagreed, and Benge now objects to that finding. (DE 734 at 30-32). The Court agrees with the Magistrate Judge.

Once again, to show prejudice under *Strickland*, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. A "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance" applies, and the question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices. *Harrington*, 562 U.S. at 104-05, 131 S.Ct. 770.

Here, there was no reasonable probability as to which direction Judge Thapar would have ruled regarding the motion to dismiss. During Benge's rearraignment, Judge Thapar made it clear that he had not reached a decision:

> [C]an I tell you I was going to dismiss the case? No. Can I tell you I wasn't going to dismiss the case? No. I can tell you it troubled me. I can also tell you, as a practice, judges try not to do anything drastic, but it doesn't mean we don't.

(DE 529 at 63). Judge Thapar continued explaining:

10

> I tossed all kinds of things over in my head. There were two things I was certain of. I'll be candid. I was certain the evidence was destroyed because no one was contesting that, and I was also certain that someone was lying to me, okay? And I can tell you it wasn't any of the attorneys. But I never finished working through that because we never finished.

(DE 629 at 67-68). On such a record, the Court cannot conclude, as Benge now does, that "the district court's commentary on this issue manifestly reveals its intent to dismiss the charge as the appropriate sanction for destroying evidence." (DE 646 at 24). And the Magistrate Judge was correct to point out that Benge would need more than a simple finding that evidence had been destroyed. To establish a due process violation when the government is found to have suppressed evidence of indeterminate exculpatory value, as it was in this case, the defendant must show "(1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other reasonably available means." *United States v. Jobson,* 102 F.3d 214, 218 (6th Cir. 1996) (citing *Arizona v. Youngblood,* 488 U.S. 51, 57-58 (1988)). The Magistrate Judge found that Benge failed to sufficiently establish that he could have proven all three prongs, and thus it was not unreasonable for his attorneys to recommend accepting the binding plea agreement. (DE 729 at 18).

In response, Benge argues that "the strongest proof that Benge is correct in his allegations comes from the fact that Senters was indicted. That indictment proves the *Youngblood* factors." (DE 734 at 31). But Senters' indictment was for perjury, and Benge fails to show how it proves anything regarding the second two prongs of the *Youngblood* test. Further, the indictment came long after the plea deal offered to Benge by the United States, and has no bearing on the constitutional effectiveness of Benge's counsel at the time of the plea deal. *See Strickland,* 466 U.S. at 689 ("A fair assessment of attorney performance requires that every

11

effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time").

Further, the Magistrate Judge is correct to point out that Benge's former counsel explained in his affidavit that "the government was thought to have cooperating witnesses who would have testified that Mr. Benge ordered the hit on Eli Marcum." (DE 669-1 at 2). In the face of an uncertain outcome as to Benge's motion to dismiss, and believing the government had cooperating witnesses as to the murder charge, the Court cannot conclude that it was constitutionally ineffective to advocate for a plea deal that dismissed the murder charge in exchange for maximum time on the conspiracy charge.

3. Counsel's Failure to File a Motion to Suppress

In his § 2255 motion, Benge faulted counsel for failing to move to suppress evidence "obtained by wiretapping his residential telephone." (DE 646 at 40). But, as the Magistrate Judge points out, failure to file a motion to suppress is not *per se* ineffective assistance of counsel. *See Kimmelman v. Morrison,* 477 U.S. 365, 384, 106 S.Ct. 2574 (1986). To establish the necessary prejudice, a defendant "must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id*. at 375.

Here, Benge does not even hazard a guess as to the effect the wiretaps or their suppression may have had on his proceeding. While Benge claims that he has never been afforded an opportunity to review the wiretap evidence, the affidavits of his former attorneys say otherwise. Attorney Adams indicated that it was his understanding that Attorney Norfleet made this evidence available to Benge, and that Benge reviewed all the recordings and transcripts with Attorney Norfleet's assistant. (DE 669-1 at 4). In his affidavit, Attorney

12

Norfleet verified and incorporated the averments of Attorney Adams' affidavit. On such a record, the Court agrees with the Magistrate Judge that Benge lacks a viable theory of prejudice on this ground, or a persuasive reason to grant his request to compel his access to these documents.

## C. Request For Evidentiary Hearing

Benge requests an evidentiary hearing on his pending Motion. As a result of the longevity of this case, the record, pleadings, and transcripts are extensive and extremely detailed. Here, no evidentiary hearing is necessary because the record conclusively demonstrates that Benge is not entitled to relief. *See Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999).

## D. Certificate of Appealability

In the case of a § 2255 petition, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has further explained that the standard of § 2253(c)(2) is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner." *Welch v. United States,* 136 S.Ct. 1257, 1263 (2016) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). In this case, the issues presented are not adequate enough to deserve encouragement to proceed further, and no reasonable jury could find that Benge's claims that his counsel acted ineffectively could be resolved in a different manner. *See Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003). As such, the recommendation of the Magistrate Judge is adopted, and no certificate of appealability shall issue.

III. **CONCLUSION**

After review of Benge's objections to the Magistrate Judge's recommendation, the Court finds no reason to disturb its prior decision to adopt the recommendation as the opinion of the Court. For the foregoing reasons, and with the Court being otherwise sufficiently advised, it is **HEREBY ORDERED** that:

1) The recommended disposition (DE 729) is **ADOPTED** as the Court's opinion;

2) Defendant Benge's objection to the recommended disposition construed as a motion for reconsideration (DE 734) is **DENIED**;

3) Defendant Benge's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence by a person in federal custody and request for evidentiary hearing (DE 642) is **DENIED**;

4) Defendant Benge's motion to supplement (DE 660) is **DENIED**;

5) Defendant Benge's request for an evidentiary hearing is **DENIED**;

6) A certificate of appealability **SHALL NOT ISSUE** because Defendant has failed to make a substantial showing of the denial of a constitutional right; and

7) A separate judgment shall issue.

Dated May 30, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY