UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>V.<br><br>JIMMY D. BENGE,<br><br>    Defendant. | CRIMINAL ACTION NO. 6:12-59-KKC<br><br><br>OPINION AND ORDER |

\*\*\* \*\*\* \*\*\*

Defendant Jimmy D. Benge's moves (DE 796) for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). For the following reasons, the motion will be denied.

Benge pleaded guilty in this Court to conspiring to distribute oxycodone. (DE 614.) By judgment dated July 7, 2015, Benge was sentenced to 240 months of imprisonment. (DE 614 at 2.) He is currently incarcerated at FCI Elkton.

He now moves to modify his sentence under 18 U.S.C. § 3582(c)(1)(A), which provides for what is commonly referred to as "compassionate release." Benge asserts that he has a variety of conditions that create a high risk of severe illness or death from COVID-19, including Type II diabetes, obesity, and hypertension. (DE 796 at 8-9, 31-36.)

18 U.S.C. § 3582(c)(1)(A) allows a court, upon a proper motion, to modify a term of imprisonment and grant what is commonly referred to as "compassionate release." Prior to the First Step Act, PL 115-391, 132 Stat 5194 (Dec. 21, 2018), the court could not grant a motion for compassionate release unless the director of the Bureau of

1

Prisons (BOP) filed the motion. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow the court to grant a motion for compassionate release filed by the defendant himself "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C.A. § 3582(c)(1)(A); PL 115-391, 132 Stat 5194 § 603 (Dec. 21, 2018).

The Sixth Circuit recently determined that the occurrence of one of the two events mentioned in the statute is a "mandatory condition" to the Court granting relief. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). If the government "properly invoke[s]" the condition, the Court must enforce it. *Id.* at 834 (internal citation and quotation marks omitted). This is because the statute says that a "'court may not'" grant compassionate release unless the defendant files his motion after one of the two events has occurred. *Id.* (quoting 18 U.S.C. § 3582(c)). Further, the Sixth Circuit ruled that this Court cannot find exceptions to the mandatory condition. *Id.* at 834 ("Nothing in § 3582(c)(1)(A) suggests the possibility of judge-made exceptions.")

While Benge does not specify when he served a request for compassionate release on the warden of his facility, the warden denied the request by a letter dated June 26, 2020. (DE 796-3 at 2.) Benge filed this motion on September 10, 2020. (DE 796.)

In its response to Benge's motion, the government argues that the Court cannot grant compassionate release in Benge's case because he has not exhausted his administrative remedies. (DE 799 at 2-3.) This is a proper invocation of the mandatory condition. *Alam*, 960 F.3d at 834. (finding no waiver or forfeiture of the

2

mandatory condition where the government timely objected to defendant's "failure to exhaust.") However, the mandatory condition is met here.

District courts across the country have grappled with the language of the First Step Act to determine precisely what a prisoner has to do before he can successfully bring his own motion for compassionate release in federal court. This Court has done the same, and, like the Eastern District of Arkansas, it has emerged uncertain of anything except: "(1) the statute would benefit from clarifying amendments in Congress and (2) this Court will not be the last word on the question." *United States v. Smith*, No. 4:95-CR-00019-LPR-4, 2020 WL 2487277, at *7 (E.D. Ark. May 14, 2020).

It is clear that, if the warden fails to act on the defendant's request for a compassionate release motion, the defendant can bring his own motion in federal court after waiting 30 days from the date the warden received his request. The uncertainty arises when a warden denies a defendant's request to file a motion for compassionate release. Can the defendant still come directly to court for relief after the lapse of 30 days from the warden's receipt of the request? Or is the defendant required to first "fully exhaust[] all administrative rights to appeal" the denial? If the defendant must first "fully exhaust" his administrative remedies, must he pursue those remedies until he reaches a final decision? Or is he required to pursue those remedies for only the 30-day period before proceeding to federal court, no matter the status of the administrative procedure?

Courts have come to different conclusions on these issues. In *Smith*, the Eastern District of Arkansas determined that the statute provides only one path to federal court when a warden denies a defendant's request for a compassionate release motion. 2020 WL 2487277, at *9. Before filing a motion in court, the defendant must

3

fully exhaust his administrative remedies. *Id.* Other courts, however, have determined that the statute grants a defendant two alternative paths to federal court after the warden denies his request for a compassionate release motion. In *United States v. Haney*, the Southern District of New York determined that "the statute does not necessarily require the moving defendant to fully litigate his claim before the agency (*i.e.*, the BOP) before bringing his petition to court." *United States v. Haney*, No. 19-CR-541 (JSR), 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020). "Rather, it requires the defendant *either* to exhaust administrative remedies *or* simply to wait 30 days after serving his petition on the warden of his facility before filing a motion in court." *Id.*

Fortunately, this Court has some guidance from the Sixth Circuit. In *Alam*, the court repeatedly interprets the statute as giving defendants two alternative tracks to federal court. "[P]risoners who seek compassionate release have the *option* to take their claim to federal court within 30 days, no matter the appeals available to them." *Alam*, 960 F.3d at 834 (emphasis added). As the Sixth Circuit views it, the statute "imposes a requirement on prisoners before they may move on their own behalf: They must 'fully exhaust[ ] all administrative rights' *or else* they must wait for 30 days after the warden's 'receipt of [their] request.'" *Id.* at 833 (emphasis added) (quoting 18 U.S.C. § 3582(c)(1)(A)). "If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must 'fully exhaust[ ] all administrative rights to appeal' with the prison *or* wait 30 days after his first request to the prison." *Id.* at 833-34 (emphasis added) (quoting 18 U.S.C. § 3582(c)(1)(A)). The court further clarified that, for those prisoners who choose to "pursue administrative review," they

4

are not required to complete it before coming to federal court. *Id*. at 836. "[P]risoners have the option to go to federal court" if they pursue administrative review, and it "comes up short (*or if 30 days pass*)." *Id.* (emphasis added).

While Benge has not presented any evidence that he "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," 18 U.S.C. § 3582(c)(1)(A), he meets the requirements for the alternative path to federal court. Because the warden denied Benge's request for compassionate release on June 26, 2020 (DE 796-3 at 2), Benge presumably filed his request before that date. Benge filed this motion on September 10, 2020. (DE 796.) Therefore, he waited 30 days after serving his request on the warden before filing this motion. *Alam,* 960 F.3d at 833. Accordingly, the Court may consider Benge's motion.

The compassionate release statute permits this Court to "reduce the term of imprisonment" and also to "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C.A. § 3582(c)(1)(A). Under the applicable provision of Section 3582(c)(1)(A), however, the Court may grant this relief only if it finds that "extraordinary and compelling reasons warrant such a reduction," and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C.A. § 3582(c)(1)(A)(i).

The statute does not define "extraordinary and compelling." Nevertheless, the policy statement by the Sentencing Commission applicable to Section 3582(c)(1)(A) sets forth the circumstances under which extraordinary and compelling reasons exist for modifying a sentence. U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1. One of these is the medical condition of the defendant. *Id.* However, the defendant must be suffering from a "terminal illness," or he must be suffering from a serious physical

5

or mental impairment "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*

Benge does not assert, nor is there an evidence in the record, that he has a terminal illness as defined under the policy statement. However, Benge asserts—and his medical record supports (DE 796-2 at 5)—that he has a permanent impairment that has substantially diminished his ability to provide self-care within the prison environment in the midst of COVID-19 because he suffers from Type II diabetes.[1] As the government conceded in *United States v. Coffman*, "a chronic medical condition identified by the CDC as a risk factor for more severe outcomes from Covid-19— including Type 2 diabetes—does substantially diminish an inmate's ability to provide self-care in prison as stated in subdivision (A)." No. 20-5602, slip op. at 3 (6th Cir. Sept. 18, 2020.) Therefore, Benge has established that "extraordinary and compelling reasons" may warrant a reduction in his sentence.

But a court may only grant compassionate release if "the factors set forth in section 3553(a) to the extent that they are applicable" support the reduced sentence. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Spencer*, No. 20-3721, 2020 WL 5498932, at *2 (6th Cir. Sept. 2, 2020). These factors include "the nature and circumstances of the offense" and "the need for the sentence imposed . . . to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). The court must also find that

---

[1] Benge also argues that he is at high risk of serious illness from COVID-19 because he has hypertension and is obese. (DE 796 at 8-9, 31-36.) However, the CDC only lists hypertension as a risk factor that "*might*" place individuals at an increased risk of severe outcomes from COVID-19. *People with Certain Medical Conditions*, Ctr. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (Sept. 11, 2020). Benge does not provide any evidence confirming the height and weight figures set forth in his motion to confirm his obesity.

6

the defendant "is not a danger to the safety of any other person or to the community." U.S. Sentencing Guidelines Manual § 1B1.13 (referencing 18 U.S.C. § 3142(g)).

Here, the Court finds that the § 3553(a) factors do not support Benge's release. Given the gravity of Benge's drug offense and that he has only served a fraction of his 240-month sentence (*see* DE 614 at 1-2), release is not appropriate. Further, Benge's drug trafficking offense suggests that he poses a continued danger to the safety of the community. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("[D]rug trafficking is a serious offense that, in itself, poses a danger to the community.").

Accordingly, the Court hereby ORDERS that Benge's motion for compassionate release (DE 796) is DENIED.

This 1st day of October, 2020,

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY